UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                  Chapter 11

DEONARINE PARASRAM  d/b/a
VANDI SALES d/b/a PARASRAM STORE,        Case No.: 16-42657-jmm

                Debtor.
------------------------------------------------------------X
RANDY BRISMAN,

                Plaintiff,

     - against -

DEONARINE PARASRAM d/b/a
VANDI SALES d/b/a PARASRAM STORE,      Adv. Proc. No.: 21-01002-jmm
98-100 SALLY LANE, LLC,
and RANNARINE KALADEEN,

                Defendants.
------------------------------------------------------------X
RANDY BRISMAN,

                Plaintiff,

     - against -

DEONARINE PARASRAM d/b/a              Adv. Proc. No.: 20-01032-jmm
VANDI SALES d/b/a PARASRAM STORE,
IBRAHIM KHALIL,
and MOHAMMED J. AHMED,

                Defendants.
------------------------------------------------------------X

## MEMORANDUM DECISION DENYING DEBTOR'S DISCHARGE

Appearances:

Joel Shafferman, Esq.              Fredrick P. Stern, Esq.
Shafferman & Feldman LLP       Scheyer & Stern, LLC
137 Fifth Avenue, 9th Floor        110 Lake Avenue So., Suite 46
New York, NY 10010            Nesconset, New York 11767
*Counsel for Plaintiff and Plan Proponent*   *Counsel for Defendant, Deonarine Parasram*
*Randy Brisman*                  *d/b/a Vandi Sales d/b/a The Parasram Store*

**HONORABLE JIL MAZER-MARINO,**
**UNITED STATES BANKRUPTCY JUDGE:**

The plaintiff, Randy Brisman (the "Plaintiff" or "Brisman"), commended these two Adversary Proceedings to deny a discharge to Deonarine Parasram d/b/a Vandi Sales d/b/a Parasram Stores (the "Defendant"). In Adversary Proceeding number 21-01002, the Plaintiff claims the discharge should be denied because the Defendant intentionally concealed his post-petition acquisition and sale of two properties. In Adversary Proceeding number 20-01032, the Plaintiff claims the discharge should be denied because the Defendant concealed his interest in a third property. The Plaintiff also claims the discharge should be denied because the Defendant failed to comply with this Court's order requiring the Defendant to file monthly operating reports and cooperate with the Plaintiff's accountant in preparing bankruptcy estate tax returns.

For the reasons set forth herein, the Court finds in favor of the Plaintiff. Therefore, the Defendant's discharge will be denied.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012. The Court may hear and determine these proceedings because they are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(J). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A. **The Bankruptcy Case**

On June 16, 2016 (the "Petition Date"), the Defendant filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pet., ECF No. 1.

On July 29 and 31, 2016, the Defendant filed his Schedules and Statement of Financial Affairs.  Schedules, ECF Nos. 20, 24; Statement of Fin. Affs., ECF No. 24.  The Schedules and Statement of Financial Affairs are signed by the Defendant under penalty of perjury.  *Id.*

The Defendant's Schedule A/B represents that as of the Petition Date, the Defendant owned nine real properties, located in Jamaica, Queens, New York:  17707 Jamaica Avenue; 17703 Jamaica Avenue; 17808 Jamaica Avenue; 19616 Jamaica Avenue; 19617 Jamaica Avenue; 21253 Jamaica Avenue; 21179 Jamaica Avenue; 8929 191st Street; and 10750 Sutphin Boulevard. Schedule A/B, Part 1, ECF No. 20.  The Defendant's Schedule A/B discloses his interests in a store that sells religious items ("Vandi Religious Goods") and a grocery store (the "Grocery"). Schedule A/B, Part 5, ECF No. 20.  The Defendant's Schedules represent the Defendant has no interest in any partnerships or joint ventures or any other business-related property.  *Id.*

On August 17, 2017, the Plaintiff filed his second amended liquidating plan of reorganization for the Defendant (the "Plan").  Plan, ECF. No. 248.  The Plan provides for distributions to creditors funded by: the sale of certain of the Defendant's real properties, defined in the Plan as the Non-SDF Properties; the sale of the Grocery inventory; the sale of Vandi Religious Goods; Defendant's accounts receivable collections; cash in a debtor in possession bank account; and the proceeds of avoidance actions.  *Id.* § 7.1.  The Plan provides that on the first business day following entry of the Confirmation Order, all assets and properties of the estate shall vest in the Plan Proponent and purchasers of estate assets.  *Id.* § 7.11.

The Court confirmed the Plan on October 11, 2017, and the order confirming the Plan (the "Confirmation Order") was entered on November 3, 2017.  Confirmation Order, ECF No. 275. The Confirmation Order directs the Defendant to cooperate with the Plaintiff and his professionals in preparing tax returns, to execute tax returns and related tax documents, to supply information to

the Plaintiff and his professionals necessary for the preparation of tax returns, and to file monthly post-confirmation reports through the entry of a final decree. *Id.* ¶¶ I, J.

The Defendant commenced filing monthly operating reports on September 28, 2016. Monthly Operating Rep., ECF No. 38. The Defendant failed to file operating reports from May 15, 2018 until May 25, 2022. Monthly Operating Rep., ECF No. 349; Post-Confirmation Quarterly Operating Reps., ECF Nos. 465-475. Initially, the Defendant's operating reports were complete. Later operating reports failed to include balance sheets. *See, e.g.*, Monthly Operating Rep., ECF No. 302.

> The Confirmation Order also provides:
>
> K. Subject to the Debtor's compliance with paragraphs I and J, <u>supra</u>, and upon the filing of a certification by counsel for the Plan Proponent confirming same, the Debtor shall be discharged of his liability on debts to the maximum extent allowed by §1141(5) of the Bankruptcy Code, and ***upon motion for entry of discharge, (CEC)*** the Court will issue a separate order of discharge. The non-discharge provision in the Plan is modified as set forth herein.
>
> L. In the event that Debtor is not in compliance with paragraphs I and J, <u>supra</u>, and upon the filing of a certification by counsel for the Plan Proponent confirming same, the Debtor ~~shall~~ ***may*** not be discharged of his liability on debts pursuant to sections 523(a)(7), (a)(14) and (a)(14A); ~~727(6);~~ ***(CEC)*** and 1141(d)(2) & (3) of the Bankruptcy Code.

Confirmation Order ¶¶ K, L.

On February 27, 2018, the Court issued an order authorizing, among other things, the sale of Vandi Religious Goods to the Plaintiff for $5,000.00 (the "<u>Sale Order</u>"). Sale Order, ECF No. 326. About two weeks later, the Plaintiff moved to hold the Defendant in contempt for violating the Sale Order. Pl.'s Mot. for Contempt, ECF No. 333. The Plaintiff's declaration in support of its motion seeking to hold the Defendant in contempt states, in part:

> On February 22, 2018, the day after the sale of the Vandi Assets was approved at the hearing before this Court, I went to Vandi's warehouse[.] . . . There, I observed five (5) employees working and labeling perfume bottles. . . . Orders were being

> placed on dollies, pallets, and the floor ready for distribution to customers. . . .
> [T]he Debtor was conducting business as usual even though the Court approved the
> sale of the Assets to me the prior day.

Pl.'s Decl. ¶ 4, ECF No. 334.  On February 5, 2020, the Plaintiff's motion to hold the Defendant

in contempt was presumably resolved and marked off the calendar.

**B.** ***Randy Brisman v. Deonarine Parasram d/b/a Vandi Sales d/b/a Parasram Store,***
***Ibrahim Khalil, and Mohammed J. Ahmed*, Adv. Proc. No. 20-01032 (Bankr. E.D.N.Y.**
**Mar. 18, 2020)**

The Plaintiff commenced this Adversary Proceeding on March 18, 2020 and filed an

amended complaint on March 19, 2020.  Compl., Adv. Proc. No. 20-01032 (Bankr. E.D.N.Y. Mar.

18, 2020) (hereinafter "Adv. Proc. No. 20-01032"), ECF No. 1; Am. Compl., Adv. Proc. No. 20-

01032, ECF No. 3.

In the amended complaint, the Plaintiff alleges that years prior to the Petition Date, the

Defendant acquired 89-43 210th Place, Queens Village, New York 11427 (the "Queens Village

Property") from Jodhan Ramsundarsing ("Ramsundarsing").  Am. Compl. ¶ 11, Adv. Proc. No.

20-01032, ECF No. 3.  The Plaintiff further alleges that the Queens Village Property was not

disclosed on the Defendant's Schedules.  *Id.*  Attached to the amended complaint is the signed

deed reflecting the transfer of the Queens Village Property from Ramsundarsing to the Defendant.

Am. Compl., Adv. Proc. No. 20-01032, ECF No. 3-2.  The Plaintiff alleges that after the Petition

Date, the Defendant transferred the Queens Village Property to Ibrahim Khalil, who, in turn,

transferred the Queens Village Property to Mohammed J. Ahmed.  Am. Compl. ¶¶ 21, 22, Adv.

Proc. No. 20-01032, ECF No. 3.

The Plaintiff also alleges the Defendant has not cooperated with and failed to supply

Plaintiff's accountants with documents necessary for the accountant to complete the 2018 tax

returns and has failed to communicate with the accountant.  *Id.* ¶ 47.

The Plaintiff's First and Second Causes of Action against Ibrahim Khalil and Mohammed J. Ahmed are to avoid the unauthorized post-petition transfer of the Queens Village Property, to obtain an order and judgment for pre- and post-judgment interest, and money damages. *Id.* ¶¶ 23-28. The Plaintiff voluntarily discontinued these Causes of Actions against Ibrahim Khalil and Mohammed J. Ahmed. Notice of Discontinuance, Adv. Proc. No. 20-01032, ECF No. 20; Stipulation and Ord., Adv. Proc. No. 20-01032, ECF No. 21.

The Plaintiff's Third Cause of Action against the Debtor is for a money judgment of no less than $405,000.00, representing the consideration received for the sale of the Queens Village Property. Am. Compl. ¶¶ 29-34, Adv. Proc. No. 20-01032, ECF No. 3.

The Plaintiff's Fourth Cause of Action seeks to deny the Defendant's discharge under Bankruptcy Code sections 1141 and 727(a)(2)(B) alleging the Defendant, with the intent to hinder, delay, or defraud creditors, concealed property after the Petition Date by failing to disclose his ownership interest in the Queens Village Property and by transferring the Queens Village Property without Court order. Am. Compl. ¶ 36, Adv. Proc. No. 20-01032, ECF No. 3.

The Plaintiff's Fifth Cause of Action seeks to deny the Defendant's discharge under Bankruptcy Code sections 1141 and 727(a)(4)(A) alleging the Defendant knowingly and fraudulently, made false oaths in this case, by failing to disclose his interests in the Queens Village Property in his 341 meeting testimony, his Schedules, or any other documents filed with the Court. *Id.* ¶ 39.

The Plaintiff's Sixth Cause of Action seeks to deny the Defendant's discharge under Bankruptcy Code sections 1141 and 727(a)(5), alleging the Defendant failed to explain the disposition of the Queens Village Property. *Id.* ¶¶ 42, 43.

The Plaintiff's Seventh Cause of Action seeks to deny the Defendant's discharge, presumably under Bankruptcy Code sections 1141 and 727(a)(6), for failing to file monthly post-confirmation reports and failing to cooperate with the Plaintiff's accountant in violation of paragraphs I and J of the Confirmation Order. *Id.* ¶¶ 46-48.

The Defendant answered the amended complaint on July 6, 2020. Def.'s Answer, Adv. Proc. No. 20-01032, ECF No. 6. On August 31, 2021, the Plaintiff moved for summary judgment. Pl.'s Mot. Summ. J., Adv. Proc. No. 20-01032, ECF No. 28; Pl.'s Statement of Facts, Adv. Proc. No. 20-01032, ECF No. 29; Pl.'s Decl., Adv. Proc. No. 20-01032, ECF No. 30; Pl.'s Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 31.

On September 28, 2021, the Defendant filed his objection to the Plaintiff's motion. Def.'s Aff. in Opp'n, Adv. Proc. No. 20-01032, ECF No. 32; Def.'s Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 33. The Defendant asserts he did not intentionally conceal his ownership interest in the Queens Village Property. Rather, Ramsundarsing recorded a deed naming the Defendant as owner "to placate [him] with an offer" respecting an outstanding debt. Def.'s Decl. ¶ 6, Adv. Proc. No. 20-01032, ECF No. 32-1. The Defendant claims he did not accept the deed, take possession of the property, or accept any benefit from it. *Id.* As such, the Defendant did not have an interest in the Queens Village Property to disclose. *Id.*; Def.'s Mem. of Law at 5, Adv. Proc. No. 20-01032, ECF No. 33. He claims that in 2017, the Defendant was contacted by a realtor who requested the Defendant "sign title documents so that a client of theirs could attempt to negotiate a deal with the bank, and I did so." Def.'s Decl. ¶ 6, Adv. Proc. No. 20-01032, ECF No. 32-1. He alleges he had no relationship with the buyer and was not paid for his cooperation. *Id.* Further, the Defendant argues the Plaintiff has not shown that the Defendant had an intent to hinder, delay, or defraud creditors. Def.'s Mem. of Law at 3-5, Adv. Proc. No. 20-01032, ECF No. 33.

7

Respecting the Plaintiff's Fifth Cause of Action, the Defendant argues his discharge cannot be denied under Bankruptcy Code section 727(a)(4) because the Plaintiff believed he had no interest in the Queens Village Property and had no intent to deceive the Court. *Id.* at 5-6.

Respecting the Plaintiff's Sixth Cause of Action, the Defendant argues his discharge cannot be denied under Bankruptcy Code section 727(a)(5), because the Plaintiff cannot establish that the Defendant "possessed or claims to control[] the Queens [Village] Property." *Id.* at 6-7.

Respecting the Plaintiff's Seventh Cause of Action, the Defendant argues his discharge cannot be denied for failing to comply with the Confirmation Order because the Plaintiff (1) failed to specify the periods for which the Defendant failed to file monthly operating reports; (2) failed to seek a Final Decree, unnecessarily prolonging the period for which monthly operating reports need be filed; and (3) failed to give the Defendant notice that he was in default in filing monthly operating reports. *Id.* at 7-9.  Additionally, the Defendant asserts he cooperated with the Plaintiff's accountant and provided documents and information.  Def.'s Decl. ¶¶ 3, 4, Adv. Proc. No. 20-01032, ECF No. 32-1.

## C. ***Randy Brisman v. Deonarine Parasram d/b/a Vandi Sales d/b/a Parasram Store, 98-100 Sally Lane, LLC, and Rannarine* Kaladeen, Adv. Proc. No. 21-01002 (Bankr. E.D.N.Y. Jan. 5, 2021)**

The Plaintiff commenced this Adversary Proceeding seeking a judgment denying the Defendant's discharge under Bankruptcy Code sections 1141, 727(a)(2)(B), and 727(a)(4)(A) and to avoid and recover real property for the benefit of the estate.  Compl., Adv. Proc. No. 21-01002 (Bankr. E.D.N.Y. Jan. 5, 2021) (hereinafter "Adv. Proc. No. 21-01002"), ECF No. 1.  The Plaintiff alleges that after the Petition Date, the Defendant and Rannarine Kaladeen ("Kaladeen") acquired two properties.  In March 2017, the two acquired 98 Sally Lane, Ridge, New York ("98 Sally Lane"), and in September 2017, the two acquired 100 Sally Lane, Ridge, New York ("100 Sally

Lane" and together with 98 Sally Lane the "Sally Lane Properties"). *Id.* ¶¶ 14, 15. Attached to the complaint are records purporting to show the Defendant's and Kaladeen's purchase of the Sally Lane Properties. *Id.* Exs. A, B. The Plaintiff alleges that on or around March 28, 2018, the Defendant and Kaladeen transferred their interests in the Sally Lane Properties to 98-100 Sally Lane LLC. *Id.* ¶¶ 20, 21. The deeds transferring the Sally Lane Properties to 98-100 Sally Lane LLC are attached to the complaint. *Id.* Exs. C, D.

The Plaintiff's First, Second and Third Causes of Action against 98-100 Sally Lane, LLC are to avoid and recover the Sally Lane Properties, for authority to sell the Sally Lane Properties under Bankruptcy Code section 363(h), and for money damages. *Id.* ¶¶ 22-38. Those claims have been resolved. *See* Ord. Approving Settlement Agreement, Adv. Proc. No. 21-01002, ECF No. 53.

The Plaintiff's Fourth Cause of Action against the Defendant seeks money damages for the Defendants unauthorized transfer of the Sally Lane Properties. Compl. ¶ 39-43, Adv. Proc. No. 21-01002, ECF No. 1.

The Plaintiff's Fifth Cause of Action objects to the Defendant's discharge pursuant to Bankruptcy Code section 727(a)(2)(B), alleging the Defendant, with intent to hinder, delay, or defraud creditors, concealed the Defendant's property by failing to disclose his interest in the Sally Lane Properties in any Court filing and by transferring his interests in the Sally Lane Properties without Court order. Compl. ¶ 45, Adv. Proc. No. 21-01002, ECF No. 1.

The Plaintiff's Sixth Cause of Action objects to the Defendant's discharge pursuant to Bankruptcy Code section 727(a)(4)(A), alleging the Defendant knowingly and fraudulently made false oaths or accounts by failing to disclose the acquisition and sale of the Sally Lane Properties

in any Court filings and by transferring his interests in the Sally Lane Properties without Court order. *Id.* ¶ 48.

The Defendant answered the complaint on February 23, 2021. Def.'s Answer, Adv. Proc. No. 21-01002, ECF No. 5. On August 31, 2021, the Plaintiff moved for summary judgment on the Fifth and Sixth Causes of Action. Pl.'s Mot. Summ. J., Adv. Proc. No. 21-01002, ECF No. 19; Pl.'s Statement of Facts, Adv. Proc. No. 21-01002, ECF No. 20; Pl.'s Decl., Adv. Proc. No. 21-01002, ECF No. 21; Pl.'s Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 22.

In his response to the Plaintiff's motion, the Defendant claimed his role respecting the Sally Lane Properties was solely as an "accommodation party" for Kaladeen. Def.'s Decl. ¶ 4, Adv. Proc. No. 21-01002, ECF No. 23-1. The Defendant states that "[y]ears ago, and prior to my bankruptcy filing, I was asked by [Kaladeen] to assist him with the purchase of the property because the Seller's [sic] had raised concerns about a sale to a non-citizen. Mr. Kaladeen knew me to be an experienced real estate investor and asked me to help him." *Id.* The Defendant contends he "contributed no monies to the transaction and received no benefits from it," and "was not obligated on the mortgage associated with the owner-financing that had been provided." *Id.* ¶¶ 4, 5. The Defendant claims his "name appeared on that deed as the holder of a 2% ownership interest, which was a fiction." *Id.* ¶ 5.

The Defendant also claims that in March 2018, when Kaladeen obtained financing to replace the original owner financing, "[Kaladeen] transferred 100% ownership of the property into his holding company, 98-100 Sally Lane, LLC, a[nd] I do not and never have held an interest of any kind" in 98-100 Sally Lane LLC. *Id.*

The Defendant also claims he "fully disclosed" his role respecting "Kaladeen's purchase of the [Sally Lane Properties]" in his operating reports and in open court. *Id.* ¶¶ 4-6. The

Defendant contends he listed the value of his interests in the Sally Lane Properties in his monthly operating reports "every month from June, 2016 to February, 2017 with a value of '$6,000' until the titular interest he had in the properties was transferred out of his name." Def.'s Mem. of Law at 2, Adv. Proc. No. 21-01002, ECF No. 24. The Defendant also claims the Sally Lane Properties "did not constitute 'property of the estate' under either sections 541 or 1115(a) of the Bankruptcy Code." *Id.*

The Defendant argues the Plaintiff's 727(a)(2)(B) claim must be denied because the Plaintiff failed to prove the Defendant knew his statements were false or the Defendant intended to defraud creditors. *Id.* at 3. The Defendant also argues that no finding of bad intent can be made because the Defendant revealed his nominal interests in the Sally Lane Properties in the monthly operating reports from June 2016 to February 2017. *Id.* at 4, 5. Similarly, the Defendant argues Plaintiff's 727(a)(4) claim must fail because the Plaintiff has not proven the Defendant's actual intent to deceive or a reckless disregard for the truth. *Id.* at 5.

The Plaintiff filed his reply on October 4, 2021. Pl.'s Reply, Adv. Proc. No. 21-01002, ECF No. 26. The Plaintiff argues that the Defendant's claim to be an accommodation party is false because the deeds and property records attached to the complaint do not reflect a "limitation or qualification on [the Defendant's] interests in the [Sally Lane P]roperties except for the percentage ownership." *Id.* ¶ 3. The Plaintiff also contends that, as a matter of law, there is no such thing as an accommodation holder for an interest in real property. *Id.*

The Plaintiff disputes the Defendant's claims that his interests in the Sally Lane Properties were disclosed in the monthly operating reports for the periods June 2016 through February 2017. *Id.* ¶ 6. The Plaintiff claims the Defendant did not acquire his interests in 98 Sally Lane and 100 Sally Lane until March 2017 and September 2017, respectively. *Id.* Therefore, operating reports

filed from June 2016 to February 2017 could not have disclosed the Defendant's interests in either of the Sally Lane Properties. *Id.* The Plaintiff denies the Defendant's allegation that he disclosed his interests in the Sally Lane Properties on or off the record until after the Plaintiff discovered the interests. *Id.* ¶ 7.[1]

### D.  **The First Hearing on Summary Judgment**

On October 20, 2021, the Court held oral argument on the motions for summary judgment in both Adversary Proceedings.

At the conclusion of the hearing, the Court afforded the Defendant the opportunity to supply the Court with additional briefing, including:

- citations to the docket and page numbers of the monthly operating reports in which the Defendant disclosed his interests in the Sally Lane Properties and the Queens Village Property.  Oct. 20, 2021 Tr. 39:4-20, ECF No. 35.[2]

- citations to the record of the bankruptcy court hearings where the Defendant disclosed his interests in the Sally Lane Properties to the Court.  Oct. 20, 2021 Tr. 40:14-24, ECF No. 35.

- support for the Defendant's contention that he had a 2% interest in both Sally Lane Properties, as opposed to a 2% interest in 98 Sally Lane and a 50% interest in 100 Sally Lane.  Oct. 20, 2021 Tr. 41:2 – 42:10, ECF No. 35.

- citations to applicable law supporting the contention that one may act as an "accommodation party" for real property, meaning one can sign a deed for real property, naming the signatory as transferee, yet have no legal or equitable interest in the real property.  Oct. 20, 2021 Tr. 46:11 – 48:4, ECF No. 35.

- citations to applicable law supporting the contention that a debtor with bare legal title, but no equitable interest in real property, need not disclose the property in the debtor's Schedules.  Oct. 20, 2021 Tr. 48:7 – 50:13, ECF No. 35.

---

[1] The Plaintiff raises many new factual allegations in the Reply to which the Defendant did not have the opportunity to respond.  The Court is not considering the new allegations.

[2] All citations to Court transcripts made in this decision will be made with reference to the docket in Adv. Proc. No. 20-01032.

- documentary evidence that the Defendant rejected the Queens Village Property deed.  Oct. 20, 2021 Tr. 50:25 – 52:21, ECF No. 35.

The Court afforded the Plaintiff the opportunity to provide supplemental briefing on the following issues:

- whether the Confirmation Order shifted the burden of proof to the Defendant to prove he was entitled to a discharge as opposed to the burden of proof being on the Plaintiff to prove the Defendant was not entitled to a discharge.  Oct. 20, 2021 Tr. 28:1-6, ECF No. 35.

- considering Bankruptcy Code sections 1141(d)(3)(A) and (B), whether this Court could grant the Plaintiff's motion for summary judgment and deny the Defendant a discharge without evidence that (1) the Plan provides for the liquidation of substantially all estate property, and (2) the Defendant did not engage in business after consummation of the Plan.  Oct. 20, 2021 Tr. 58:13 – 59:11, ECF No. 35.

## E. __Additional Briefing in Adv. Proc. No. 21-01002__

On November 12, 2021, the Plaintiff filed his supplemental memorandum of law in support of his motion for summary judgment.  Pl.'s Suppl. Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 27.  The Plaintiff's supplemental memorandum failed to provide legal support for his contention that the burden of proof was on the Defendant to prove he was entitled to a discharge. The supplemental memorandum also failed to provide support for the Plaintiff's contention that this Court could grant summary judgment to the Plaintiff if the fact as to whether the Defendant engaged in business post-Plan consummation was in dispute.  The memorandum includes citations supporting the Plaintiff's proposition that a debtor's mere employment by a pre-petition date business is not considered "engaging in business" for purposes of 1141(d).  *See id.* at 4-6 (citing *Grausz v. Sampson* (*In re Grausz*) 63 Fed. Appx. 647 (4th Cir. 2003), *Suarez v. Suarez* (*In re Suarez*), Case No. 91-20276, Adv. Proc. No. 92-2009, 1992 Bankr. LEXIS 2584, 2007 WL 7024926 (Bankr. S.D. Ga. Feb. 8, 2007), and *Um v. Spoke Rock I, LLC* (*In re Um*), 904 F.3d 815 (9th Cir. 2018)).  The cases, however, do not address the dispute in this case as to whether the Defendant operated Vandi Religious Goods or the Grocery after Plan consummation.

On November 12, 2021, the Defendant filed his supplemental memorandum of law in opposition to the Plaintiff's motion for summary judgment.  Def.'s Suppl. Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 28.  In response to the Court's request for references to the monthly operating reports disclosing the Defendant's interests in the Sally Lane Properties, the Defendant reiterated his claim that "each MOR filed between June, 2016 and March, 2017 disclosed the Debtor's interest under the notation 'Partnerships & Joint Ventures' as a value of $6,000.00" and reminded the Court that the Defendant prepared the operating reports and has no training as a bookkeeper or accountant.  *Id*. at 1.

In response to the Court's request for authority for the proposition that one can be an "accommodation party" for real property, the Defendant referred the Court to Black's Law Dictionary, which defines accommodation party as "[a] party that guarantees a loan for another party with no benefit to themselves. AKA accommodation endorser."  *Id*. at 2.  The Defendant also cited UCC 3-415(1), which discusses the obligations of an endorser to a negotiable instrument. *Id.* at 2.

In response to the Court's request for authority supporting the Defendant's claim he need not schedule property in which he has no equitable interest, the Defendant argues that bankruptcy courts recognize that a debtor may have legal title to property but may not have an equitable interest in the same property.  In such cases, the estate only includes the debtor's bare legal title. The Defendant then quotes *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989) in which the Second Circuit Court of Appeals stated "the bankruptcy estate does not include property of others in which the debtor has some minor interest such as a lien or bare legal title."  *Id.* at 3.

On November 19, 2021, the Defendant filed an additional memorandum. *See* Def.'s Suppl. Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 31.  The Defendant argues that the Plaintiff admitted that the Defendant operated a business after Plan confirmation:

> While the Plaintiff argues in this proceeding that Parasram is no longer operating a business and is, therefore, not eligible for a discharge, the Plaintiff has repeatedly, and hypocritically, maintained that, since the entry of the Confirmation Order, Parasram "has continued to operate using the Vandi Assets, operating the Vandi business at the same location, 178-10 Jamaica Avenue, Jamaica, New York 11432 (the "Vandi Premises"), where Parasram operating his Vandi business before the entry of the Sale Order."  ECF Doc. No. 408.  Likewise, the Plaintiff has alleged that Parasram continues to operate the "Parasram Store" since the entry of the Confirmation Order.

*Id.* at 3.

## F.  **Additional Briefing in Adv. Proc. No. 20-01032**

On November 12, 2021, the Plaintiff filed a supplemental memorandum of law that mirrors the supplemental memorandum filed in Adv. Proc. No. 21-01002.  *Compare* Pl.'s Suppl. Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 36, *with* Pl.'s Suppl. Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 27.

On that same date, the Defendant filed a second supplemental memorandum of law and supporting declaration.  Def.'s Suppl. Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 37; Def.'s Decl., Adv. Proc. No. 20-01032, ECF No. 37-2.  The Defendant admits he signed the deed and documents necessary to record the Queens Village Property deed and abandons the legal argument that he did not accept the Queens Village Property deed.  Def.'s Decl. ¶ 2, Adv. Proc. No. 20-01032, ECF No. 37-2.  Instead, the Defendant claims the error resulted from a "faulty memory, as the transfer occurred almost a decade before the bankruptcy filing," and a "misunderstanding of the law with regard to acceptance of the deed" for the Queens Village Property.  *Id.*  In addition,

he claims English is not his first language and he failed to explain his circumstances to his attorney accurately. *Id.* The Defendant then explains:

> [A]fter the deed was executed Mr. Ramsundursing refused to vacate the premises and never allowed me to exert any control over same. As a result I never accepted any ownership obligations or rights and abandoned any claim to the [Queens Village Property]. . . . I heard nothing further about the [Queens Village Property] until I was asked to sign documents to remove my name from the title sometime in 2017. Since I never accepted the [Queens Village P]roperty I did not believe that I had any ownership rights to it and that the transfer documents were a mere formality.

*Id.* ¶ 3.

The Defendant argues the discharge should not be denied because the Queens Village Property was of no benefit to the estate and the Defendant has provided a credible explanation as to why his ownership interest was not disclosed. Def.'s Suppl. Mem. of Law at 5, Adv. Proc. No. 20-01032, ECF No. 37.

On November 19, 2021, the Defendant filed an additional memorandum of law. Def.'s Suppl. Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 40. This supplemental memorandum mirrors the one filed in Adv. Proc. No. 21-01002, ECF No. 31.

On November 22, 2021, the Defendant filed yet another supplemental reply. Def.'s Suppl. Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 41. The Defendant argues he continued to earn income post-petition, meeting the definition of "engaging in business" under Bankruptcy Code section 1141(d)(3) and there are disputes as to material facts precluding this Court from granting summary judgment on the Plaintiff's motion to deny the Defendant's discharge. *See id.* at 2, 3.

G. **The Second Hearing on Summary Judgment**

On January 19, 2022, the Court held a second hearing on the motions for summary judgment in both Adversary Proceedings. The Court denied the Plaintiff's motion for summary

judgment and set a trial date to hear evidence on whether the Defendant was engaged in business post-Plan consummation and other issues.  Jan. 19, 2022 Tr. 21:2 – 22:19, ECF No. 42.

On March 22, 2022, the Court entered an Order memorializing its January 19, 2022 bench decision denying the Plaintiff's motions for summary judgment, scheduling a trial with respect to the Causes of Action objecting to the Debtor's discharge, and setting deadlines for filing witness and exhibit lists and motions *in limine*.  Ord. Denying Pl.'s Mot. Summ. J., Adv. Proc. No. 20-01032, ECF No. 43; Ord. Denying Pl.'s Mot. Summ. J., Adv. Proc. No. 21-01002, ECF No. 38.

## H.  **The Trial**

The Court conducted a trial on May 25, 2022.  The Defendant was the sole witness.

Respecting the Queens Village Property, the Defendant testified that as of the Petition Date, his name was on the Queens Village Property deed, he held the deed as collateral for a $150,000.00 loan, but he did not discuss the Queens Village Property with his attorney or disclose the property in his Schedules.  May 25, 2022 Tr. 36:5 – 37:25; 38:25 – 39:21, ECF No. 52.  The Defendant testified he did not believe he owned the Queens Village Property as Ramsundarsing was paying the insurance, taxes, mortgage, and other related expenses.  May 25, 2022 Tr. 38:8 – 38:24, ECF No. 52.  The Defendant admitted he transferred the Queens Village Property, post-Petition Date, to Ibrahim Khalil around the summer of 2018 without Court approval, notifying the United States Trustee, or disclosing the transfer in his monthly operating reports.  May 25, 2022 Tr. 42:18 – 43:23, ECF No. 52.

Respecting the Sally Lane Properties, the Defendant testified:

- he acquired an interest in 98 Sally Lane post-Petition Date.  May 25, 2022 Tr. 44:2-17, ECF No. 52.

- he helped Kaladeen acquire 98 Sally Lane as it was Kaladeen's first time buying a property, but the Defendant owned at least a two percent interest in the property. May 25, 2022 Tr. 44:6-17, ECF No. 52.

- he listed the two percent interest in his Schedules as a $6,000.00 joint interest but did not include the property address or the nature of the interest. May 25, 2022 Tr. 44:18 – 45:19, ECF No. 52.

- he facilitated Kaladeen's acquisition of 100 Sally Lane. May 25, 2022 Tr. 45:20 – 46:4, ECF No. 52.

- he was unaware he held a fifty percent interest in 100 Sally Lane and had not seen the deed until the Plaintiff's counsel brought these Adversary Proceedings. May 25, 2022 Tr. 46:5 – 47:8, ECF No. 52.

- the Sally Lane Properties were transferred to Sally Lane LLC in the spring of 2018 and he no longer owns an interest in those properties. May 25, 2022 Tr. 47:22-24; 48:2-7, ECF No. 52.

- Kaladeen is the sole member of Sally Lane LLC and the Defendant has no interest in Sally Lane LLC. May 25, 2022 Tr. 52:10-17, ECF No. 52.

- he did not seek bankruptcy court approval for the transfer of his interests in the Sally Lane Properties to Sally Lane LLC. May 25, 2022 Tr. 52:18 – 53:1, ECF No. 52.

On the issue of whether the Defendant engaged in business post-Plan consummation, the Defendant testified he does not currently operate any businesses, he works three days a week as a part time employee buying produce for the Grocery, and he does not possess an ownership interest in that entity. May 25, 2022 Tr. 55:1-15, ECF No. 52. He described the Grocery as "Kaladeen's store." May 25, 2022 Tr. 55:6-7, ECF No. 52. The Defendant testified he performed the same role when he owned the Grocery but is now paid daily as an employee. May 25, 2022 Tr. 57:24 – 58:21, ECF No. 52. The Defendant also testified he has not operated Vandi Religious Goods since the plan was confirmed. May 25, 2022 Tr. 55:16-25, ECF No. 52.

## I.   Post-trial Briefing in Adv. Proc. No. 20-01032

On July 13, 2022, the Plaintiff filed a post-trial memorandum of law. Pl.'s Post-Trial Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 54. The Plaintiff argues that the first two prongs of Bankruptcy Code section 1141(d)(3) are met as the Defendant's properties were marketed and sold, with the exception of the Grocery, and the Defendant's "part time employment buying

produce for Mr. Kaladeen" does not qualify as engaging in business under section 1141(d)(3)(B). *Id.* at 11, 14.

The Plaintiff argues the Defendant would be denied a discharge under Bankruptcy Code sections 727(a)(2)(B), 727(a)(4)(A), and 727(a)(5) as the Defendant failed to disclose the Queens Village Property on his Schedules or at his 341 meeting, and the Defendant transferred the Queens Village Property without Court approval. *See id.* at 14-21. The Plaintiff also argues the Defendant's discharge would be denied under Bankruptcy Code section 727(a)(6) because the Defendant has not complied with paragraphs I, J, and L of the Confirmation Order. Those paragraphs provide that the Defendant's discharge may be denied if the Defendant fails to, among other things, file operating reports through the entry of a Final Decree. *Id.* at 21-22.

On August 15, 2022, the Defendant filed a post-trial memorandum of law. Def.'s Post-Trial Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 55.

The Defendant argues that the Plaintiff has failed to meet his burden of showing that the Defendant was not engaged in business after Plan consummation as required by Bankruptcy Code section 1141(d)(3)(B). *See id.* at 1. The Defendant claims he is currently engaged in business as a "buyer" for the Grocery. *Id.* at 3. Citing *Felder v. United States Tennis Assn.*, 27 F.4th 834 (2d Cir. 2022), the Defendant argues the Plaintiff has failed to establish whether the Defendant was an employee or an independent contractor for the Grocery. *Id.* at 6-7. Therefore, the Court must find that the Defendant continued to engage in business. *Id.* at 7. The Defendant also claims he was engaged in business almost two years after confirmation and the Plaintiff admits that "[the Defendant] was 'currently using the Vandi Assets, operating the Vandi business out of the Vandi Premises, and selling counterfeit Vandi products to the Customers.'" *Id.* at 2-3.

The Defendant argues that the Plaintiff has not met his burden of proving the Defendant would be denied a discharge under Bankruptcy Code section 727(a)(6) because the Plaintiff has not established the Defendant's failure to comply with the Confirmation Order. *See id.* at 1. The Defendant argues his failure to file monthly operating reports was due to his desire to close the case and as he was preparing the reports himself to avoid paying for an accountant. *See id.* at 3-4. The Defendant further argues that the Plaintiff has failed to file a certification regarding the Defendant's noncompliance with Paragraph L of the Confirmation Order, a prerequisite for denying the Defendant a discharge under the order. *See id.* at 2.

The Defendant argues his discharge should not be denied based on his failure to disclose the Queens Village Property because he could not exercise ownership rights as to the Queens Village Property and believed he had relinquished all rights. *See id.* at 3.

As to the Sally Lane Properties, the Defendant argues the parties had agreed with the Court that there was no requirement that the Defendant revise his Schedules to include post-petition acquisitions, with such acquisitions being disclosed by way of monthly operating reports instead. *See id.* at 3-4.

Finally, the Defendant argues that the conduct regarding the Queens Village Property was inadvertent, and as to the Sally Lane Properties, the Plaintiff has failed to establish the Defendant's actual intent to hinder, delay, or defraud creditors. *See id.* at 7-8.

On August 25, 2022, the Plaintiff filed a post-trial reply. Pl.'s Post-Trial Reply Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 56. The Plaintiff argues he was not required to file a separate certification respecting the Defendant's default under paragraphs I and J of the Confirmation Order because the Defendant's default was alleged in the complaint. Further, the

failure to file the certification does not change that the Defendant did not comply with the Confirmation Order by failing to file operating reports. *See id.* at 2.

Regarding whether the Defendant operated a business after Plan consummation, the Plaintiff claims his statement in his March 19, 2018 declaration that the Defendant improperly operated the Vandi business is irrelevant because the Defendant testified under oath "that he does not own any business and works three days a week as an employee for Mr. Kaladeen buying produce for his store." *Id.* at 3. Additionally, the Plaintiff argues *Felder* does not require the Plaintiff to introduce evidence the Defendant was an employee as opposed to an independent contractor because the Defendant testified he was Kaladeen's employee. *See id.* at 3-4.

The Plaintiff asserts the Defendant's claims that he believed he could not exercise any rights with respect to the Queens Village Property is without evidentiary support and, in fact, the Defendant had the deed to the property and transferred his interest in it post-Petition Date. *See id.* at 4-5. The Plaintiff's final argument is that the Defendant's listing of his post-Petition Date acquisition of the Sally Lane Properties as "Partnership & Joint Ventures" in his monthly operating reports with a value of $6,000.00 was insufficient to disclose the acquisition. *See id.* at 5. The Plaintiff asserts that the Defendant's actual intent to deceive or reckless disregard for the truth can be inferred from the Defendant's course of conduct in the case. *See id.* at 5-6.

### J. Post-trial Briefing in Adv. Proc. No. 21-01002

The post-trial briefs filed by the parties in Adv. Proc. No. 21-01002 are substantially similar to those filed in Adv. Proc. No. 20-01032. *Compare* Pl.'s Post-Trial Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 52, *and* Def.'s Post-Trial Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 54, *and* Pl.'s Post-Trial Reply Mem. of Law, Adv. Proc. No. 21-01002, ECF No. 55, *with* Pl.'s Post-Trial Mem. of Law, Adv. Proc. No. 20-01032, ECF No. 54, *and* Def.'s Post-Trial Mem. of

Law, Adv. Proc. No. 20-01032, ECF No. 55, *and* Pl.'s Post-Trial Reply Mem. of Law, Adv.

No. 20-01032, ECF No. 56.

## DISCUSSION

Under Bankruptcy Code section 1141(d)(3), plan confirmation discharges the debtor from all pre-confirmation debt unless: (1) the plan provides for the liquidation of all or substantially all of the property of the estate, (2) the debtor does not engage in business after consummation of the plan, and (3) the debtor would be denied a discharge under Bankruptcy Code section 727(a) if the case were a case under chapter 7.  11 U.S.C. § 1141(d)(3) (2022).

The plaintiff bears the burden of proof on an objection to discharge.  FED. R. BANKR. P. 4005.  Each element of the objection must be established by a preponderance of the evidence.  *In re Dubrowsky*, 244 B.R. 560, 571 (E.D.N.Y. 2000).  "Once sufficient evidence is presented by the plaintiff to satisfy the burden of going forward with the evidence, the burden shifts to the debtor to provide evidence to rebut the plaintiff's prima facie case."  *Id.* at 572 (quoting *Painewebber Inc. v. Gollomp* (*In re Gollomp*), 198 B.R. 433, 440 (S.D.N.Y. 1996)).

### I.      The Defendant's Plan is a Liquidating Plan.

The Plan provides for the liquidation of all or substantially all of the Defendant's estate's property.  *See* Confirmation Order.  The Defendant has not introduced evidence to the contrary. Accordingly, 1141(d)(3)(A) is satisfied.

### II.      The Defendant Did Not Engage in Business after Consummation of the Plan.

"Engaging in business" is not defined in the Bankruptcy Code.  Courts hold that "engaging in business" "does not refer to basic employment by an individual debtor but to the continuation of a pre-petition business."  *Grausz v. Sampson* (*In re Grausz*), 63 Fed. App'x 647, 650 (4th Cir. 2003) (Individual debtor employed as consultant "for a business unrelated to the entities at issue

in the bankruptcy" was not engaging in business post-consummation.); *see In re Um*, 904 F.3d at 820 (Debtors not engaging in business because "[t]hey were simply employees in businesses owned or operated by others[.]"); *In re Owens*, 207 B.R. 520, 526 n.1 (Bankr. E.D. Ky. 1996) (Debtor's employment by pre-petition business did not constitute engaging in business for purposes of Bankruptcy Code section 1141(d).); *but see In re Suarez,* 2007 WL 7024926, at *2 (Licensed medical doctor intending to continue to practice medicine was engaged in business notwithstanding liquidation of pre-petition business.).

The Defendant's pre-petition business was ownership and management of the SDF Properties, Non-SDF Properties, Vandi Religious Goods, and operating the Grocery. There is no dispute the SDF Properties, Non-SDF Properties and Vandi Religious Goods were sold under the Plan.

The Defendant argues that his work at the Grocery is "engaging in business" for purposes of Bankruptcy Code section 1141(d)(3)(B). However, the Defendant testified he does not currently operate any businesses and works three days a week as a part time employee buying produce for Parasram Market, LLC. May 25, 2022 Tr. 55:1-15, ECF No. 52. The Defendant described Parasram Market, LLC as "Mr. Kaladeen's store" and testified he did not have an ownership interest in that store anymore. *Id*. The Defendant testified he performed the same role when he owned the market but is now paid a daily rate. May 25, 2022 Tr. 57:24 – 58:21, ECF No. 52.

The Defendant's testimony establishes that after Plan consummation, the Defendant was not operating the Grocery but was a salaried employee of the Grocery's owner.

The Defendant argues he engaged in business by operating Vandi Religious Goods post confirmation. Under Plan section 7.11, the Vandi assets vested in the Plaintiff upon Plan confirmation. Under the Sale Order, the Vandi assets were sold to the Plaintiff. If the Defendant

operated Vandi Religious Goods after Plan consummation, he did so in violation of the Confirmation Order and Sale Order.  The Court will not hold that the Defendant's operation of a business in which he had no right, title or interest, in violation of Court orders, constitutes "engaging in business" for purposes of Bankruptcy Code section 1141(d)(3)(B).  Holding such could encourage chapter 11 debtors to convert estate assets or interfere with the implementation of a confirmed liquidating plan to salvage a discharge.  Further, the Defendant testified he stopped operating Vandi Religious Goods business after Plaintiff filed his motion for contempt.  May 25, 2022 Tr. 55:16-25, ECF No. 52.

The Defendant erroneously asserts this Court "cannot possibly determine whether Parasram acted as an employee or an independent contractor in his current role as a 'buyer'" without having gone through the factors outlined in *Felder*.  Def.'s Post-Trial Mem. of Law at 7, Adv. Proc. No. 20-01032, ECF No. 55.  In *Felder*, the Second Circuit Court of Appeals addressed the pleading elements of a claim under Title VII of the 1964 Civil Rights Act, which prohibits workplace discrimination.  *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 841-42 (2d Cir. 2022).  The Second Circuit Court of Appeals held that to plead a Title VII claim against an alleged joint employer, plaintiff must plead facts tending to show the existence of an employer-employee relationship with the purported joint employer.  *Id.* at 842-43.  For example, that the joint employer controlled the employee's hiring, firing, training, and discipline.  *Id.* at 843.  *Felder* was not decided under Bankruptcy Code section 1141(d)(3), or any provision of the Bankruptcy Code, and is inapposite.

III.    **The Defendant would be Denied a Discharge under 11 U.S.C. § 727.**

A. **11 U.S.C. § 727(a)(2)(B)**

The Plaintiff objects to discharge under Bankruptcy Code section 727(a)(2)(B) on the grounds that the Defendant concealed the Queens Village Property and the Sally Lane Properties with the intent to hinder, delay, or defraud creditors.

To prevail on a claim under 11 U.S.C. § 727(a)(2)(B), a plaintiff must prove by a preponderance of the evidence that "(1) the debtor (2) transferred or concealed (3) property of the bankruptcy estate (4) with the intent to hinder, delay, or defraud the creditor (5) after the filing of the bankruptcy petition." *Pisculli v. T.S. Haulers* (*In re Pisculli*), 408 F. App'x 477, 479 (2d Cir. 2011).

1.    The Sally Lane Properties and the Queens Village Property are Property of the Bankruptcy Estate.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Bankruptcy Code defers to state law in determining what interests are property of the estate. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Accordingly, New York law determines the Defendant's estate's interests in the Sally Lane Properties and the Queens Village Property.

"In New York, a conveyance in property is valid if the deed is executed, acknowledged, delivered and accepted." *In re Smith*, 469 B.R. 198, 202 (Bankr. S.D.N.Y. 2012); *Buckley v. Chevron, U.S.A., Inc.*, 149 Misc. 2d 476, 479 (Sup. Ct. Dutchess Cty. 1991) ("As long as the grantor unconditionally hands over the deed and the grantee accepts it, the transfer is effective to place title in the grantee."). Here, the Defendant is named on the 98 Sally Lane deed as a 2% owner and on the 100 Sally Lane deed as a joint owner. The Plaintiff does not contend the grantor did not deliver, or the Defendant did not accept the deeds for the Sally Lane Properties. As such,

under New York law, the deeds effectively placed title in the Sally Lane Properties in the Defendant and Kaladeen. Accordingly, under Bankruptcy Code sections 541 and 1115(a)(1), the Defendant's interests in the Sally Lane Properties are property of the bankruptcy estate.

The Defendant contends, in reliance on Black's Law Dictionary and New York Uniform Commercial Code section 3-415, that the Sally Lane Properties are not estate property because the Defendant held title to those properties as an accommodation party. The Defendant's reliance on Black's Law Dictionary and the Uniform Commercial Code is misplaced. Both Black's Law Dictionary and New York Uniform Commercial Code section 3-415(1) refer to an accommodation party as someone who agrees to be liable (to some extent) on the payment obligation of another party. An example of an accommodation party is a guarantor. Neither Black's Law Dictionary nor the Uniform Commercial Code contemplates the concept of an accommodation party for an asset (such as real property) as opposed to a liability. To clarify, the Defendant would be an accommodation party had he guaranteed Kaladeen's obligations under a mortgage for the properties. The Defendant, however, could not be an accommodation party by signing the property deeds and agreeing to be listed as an owner of the properties.

The Defendant's reliance on *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989) is misplaced. In that case, the Second Circuit Court of Appeals stated "the bankruptcy estate does not include 'property of others in which the debtor ha[s] some minor interest such as a lien or bare legal title[.]'" *Id.* (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8 (1983)). The Defendant, however, failed to prove that his interests in the Sally Lane Properties were limited to a lien or bare legal title. Rather, the evidence shows the Defendant held a two percent ownership interest in 98 Sally Lane and a 50% ownership interest in 100 Sally Lane. Therefore, the Sally Lane Properties were property of the Defendant's bankruptcy estate.

26

The Defendant abandoned his argument that he rejected the Queens Village Property deed and does not appear to dispute that he owned the Queens Village Property as of the Petition Date.

### 2.  The Defendant Concealed Property of the Estate after the Petition Date.

There is no dispute the Defendant failed to disclose the Queens Village Property in his Schedules and failed to seek Bankruptcy Court approval for his transfer of the Queens Village Property or his acquisition and transfer of the Sally Lane Properties.

The Defendant claims he disclosed his ownership of the Sally Lane Properties in his monthly operating reports for June 2016 to February 2017.  In fact, the balance sheets attached to those operating reports listed the Defendant's interests in partnerships as worth $6,000.00.  The balance sheets attached to the monthly operating reports filed on and after April 2017 are blank. The Defendant acquired 98 Sally Lane on March 27, 2017 and transferred 98 Sally Lane to the LLC on March 29, 2018.  The Defendant acquired 100 Sally Lane in September 2017 and transferred the property in March 2018.  Accordingly, the acquisition and transfer of the Sally Lane Properties could not be disclosed in the monthly operating reports for June 2016 to February 2017 because the Defendant did not acquire the Sally Lane Properties until after the Defendant ceased reporting the $6,000.00 partnership interest on his monthly operating reports.

The Defendant claims he disclosed his interest in the properties to the Court but cannot or will not provide a citation to the record that supports that contention.

Therefore, this Court finds the Defendant concealed his interests in the Queens Village Property and the Sally Lane Property after the Petition Date.

### 3.  The Defendant Intended to Hinder, Delay or Defraud Creditors.

To succeed on a Bankruptcy Code section 727(a)(2)(B) claim, "the plaintiff must establish an actual intent to hinder, defraud or delay." *Glaser v. Glaser* (*In re Glaser*), 49 B.R. 1015, 1019 (Bankr. S.D.N.Y. 1985).  "Actual fraud involves moral turpitude" and "connotes deceit, artifice,

or trick which involves a direct and active operation of intellect which is designed to mislead." *In re Pommerer*, 10 B.R. 935, 939 (Bankr. D. Minn. 1981). A debtor acts with an intent to hinder creditors if they act with an intent to impede or obstruct their creditors, but a debtor acts with an intent to delay if they act with an intent to slow or postpone their creditors. *Wiggains v. Reed* (*In re Wiggains*), Case No. 13-33757-SGJ-7, Adv. Proc. No. 14-03064-SGJ, 2015 Bankr. LEXIS 1460, 2015 WL 1954438, at *17 (Bankr. N.D. Tex. Apr. 27, 2015), *aff'd sub nom. Wiggains v. Reed* (*In re Wiggains*), 848 F.3d 655 (5th Cir. 2017).

"Whether a debtor acts with 'actual intent to hinder, delay or defraud' is a fact-specific inquiry." *Mazer-Marino v. Levi* (*In re Levi*), 581 B.R. 733, 745 (Bankr. S.D.N.Y. 2017). "[I]ncorrect statements on schedules can amount to proof of fraudulent intent." *Id.* Fraudulent intent also can be found where the defendant demonstrates a reckless disregard or indifference for the truth. *Id*. at 746. "A pattern of omissions by the debtor is often sufficient to find fraudulent intent, but an innocent mistake or error will not suffice[,]" and "[t]he Court may deduce such behavior from the facts and circumstances of the case." *Helbling v. Holmes* (*In re Holmes*), Case No. 07-17017, Adv. Proc. No. 08-1159, 2008 Bankr. LEXIS 4577, 2008 WL 6192253, at *11 (Bankr. N.D. Ohio Dec. 3, 2008) (citation omitted).

Here, the Defendant:

- failed to disclose his interest in the Queens Village Property in his Schedules;

- failed to disclose his interest in the Queens Village Property in his 341 meeting of creditors;

- failed to obtain Bankruptcy Court Approval of his post-Petition Date transfer of his interest in the Queens Village Property;

- asserted in Court filings that he did not accept the deed for the Queens Village Property and retracted that argument only after the Court requested additional briefing;

- failed to obtain Bankruptcy Court approval of his post-petition acquisition and transfer of his interests in the Sally Lane Properties; and

- failed to disclose his interests in the Sally Lane Properties in his monthly operating reports.

The Defendant claims the Court should not find the Defendant acted with fraudulent intent because the Defendant simply forgot the facts related to the Queens Village Property. Additionally, the Defendant claims the monthly operating reports were either not filed or deficient because the Defendant "has no specific training as a bookkeeper or accountant, prepared the MORs himself in order to avoid the added expense of paying an accountant to provide the services." Def.'s Suppl. Mem. of Law at 1, Adv. Proc. No. 21-01002, ECF No. 28. Nonetheless, the onus was on the Defendant to ensure his Schedules and monthly operating reports were complete and accurate. Moreover, the Defendant owned many real properties and two businesses. Based on his business experience an inference can be drawn that he had some ability to understand the nature of his interests in the Queens Village Property and the Sally Lane Properties and the requirement to report his assets and business dealings accurately.

The Defendant's failure to disclose his interests in the Queens Village Property and the Sally Lane Properties together with the Defendant's failure to seek bankruptcy court approval for the acquisition of the Sally Lane Properties and transfer of the Queens Village Property and the Sally Lane Properties, establishes a pattern of omissions evidencing fraudulent intent.

Based on the foregoing, the Court finds that Plaintiff has carried his burden and proven the elements of his claim under Bankruptcy Code section 727(a)(4)(B).

### B. 11 U.S.C. § 727(a)(4)(A)

To prevail on a claim under 727(a)(4)(A), the Plaintiff must prove by a preponderance of evidence that, "(1) the debtor made a statement under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy case; (4) the debtor knew the statement was false;

and (5) the debtor made the statement with fraudulent intent." *Agai v. Antoniou* (*In re Antoniou*), 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (quoting *Lisa NG v. Adler* (*In re Adler*), 494 B.R. 43, 74 (Bankr. E.D.N.Y. 2013)).

       1.  <u>The Defendant Made False Statements Under Oath.</u>

The Defendant's Schedules and monthly operating reports were signed by the Defendant under penalty of perjury. The Defendant's Schedules were false because they omitted the Queens Village Property. The Defendant's monthly operating reports were false because they failed to disclose the Defendant's acquisition of the Sally Lane Properties, the Defendant's transfer of the Sally Lane Properties, and the Defendant's transfer of the Queens Village Property. Additionally, the Defendant's declaration, dated September 28, 2021 was filed under penalty of perjury. Def.'s Decl., Adv. Proc. No. 20-01032, ECF No. 32-1. That declaration falsely stated that the Defendant did not accept the deed to the Queens Village Property.

       2.  <u>The False Statements Related Materially to the Bankruptcy Case.</u>

"[A] 'material matter' is 'one bearing a relationship to the debtor's business transactions or estate or which would lead to the discovery of assets, business dealings or existence or disposition of property.'" *Carlucci & Legum v. Murray* (*In re Murray*), 249 B.R. 223, 228 (E.D.N.Y. 2000) (quoting *Walters v. Sawyer* (*In re Sawyer*), 130 B.R. 384, 394 (Bankr. E.D.N.Y. 1991)); *Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (stating that "omissions are material if they impact the trustee's ability to discover assets" for the estate).

The Defendant's false statements are material because they relate to the existence or disposition of the Queens Village Property and the Sally Lane Properties and would lead to discovery of business dealings with Kaladeen and Ramsundarsing. Also, the Defendant stated that he took the Queens Village Property as collateral for a debt owed by Ramsundarsing, so the

disclosure of the Queens Village Property could have resulted in the estate collecting the debt for the benefit of creditors.

### 3.   The Defendant Knew the Statements were False.

The Defendant contends he did not know his Schedules or his September 18, 2021 declaration were false because he did not recall the facts surrounding his acquisition of the Queens Village Property until after the Court asked for additional briefing.  The Debtor's claim is not credible.

The Defendant insists his monthly operating reports are not false because they disclose the Defendant's interests in the Sally Lane Properties. As set forth above, the Defendant's claim is not true.  The reports do not disclose such interests.  The Defendant himself prepared the monthly operating reports yet he offers no explanation for the omission of the Sally Lane Properties from the monthly operating reports.

### 4.   The Defendant Made the Statements with Fraudulent Intent.

"Fraudulent intent must be shown by actual, not constructive fraud."  *In re Dubrowsky*, 244 B.R. at 571 (quoting *In re Kelly*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992)).  "The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions."  *Id.* at 571-72.  As set forth above in connection with the Plaintiff's claims under Bankruptcy Code section 727(a)(4)(B), the Defendant has demonstrated a pattern of omissions that go beyond carelessness and evidence fraudulent intent.

Based on the foregoing, the Court finds the Plaintiff has carried his burden of proof on the elements of his Bankruptcy Code section 727(a)(4)(A) claim.

### C. **11 U.S.C. § 727(a)(5)**

Under Bankruptcy Code section 727(a)(5), "[t]he Court shall grant the debtor a discharge unless the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

To obtain a denial of discharge under Bankruptcy Code section 727(a)(5), the plaintiff must establish a loss or deficiency of assets. *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 238 (2d Cir. 2006). Once the plaintiff has presented proof that the debtor possessed assets that were not listed in the schedules, the debtor must satisfactorily explain what happened to those assets. *See id.* at 238; *First Am. Bank v. Bodenstein* (*In re Bodenstein*), 168 B.R. 23, 33 (Bankr. E.D.N.Y. 1994). The debtor's explanation does not need to be meritorious, and the loss or disposition of assets does not need to be proper for the debtor to satisfy section 727(a)(5). *See id.* A debtor's explanation only needs to "satisfactorily account [for] the disposition." *Premier Capital, LLC v. Gasson* (*In re Gasson*), Case No. 12-23703 (RDD), Adv. Proc. No. 14-08217 (SHL), 2018 Bankr. LEXIS 3943, 2018 WL 6603737, at *55 (Bankr. S.D.N.Y. Dec. 13, 2018).

The Defendant's testimony at the May 25, 2022 trial explains the disposition of the properties. The Defendant testified he transferred the Queens Village Property, post-petition, to Ibrahim Khalil around the summer of 2018. May 25, 2022 Tr. 42:18 – 43:23, ECF No. 52. The Defendant testified he transferred his interests in the Sally Lane Properties to Sally Lane LLC. May 25, 2022 Tr. 44:2-17; 48:2-7, ECF No. 52. Although the Defendant's disposition of the three properties is improper, the Defendant's explanation accounts for the properties. The Plaintiff has failed to carry his burden on his 727(a)(5) claims.

### D. 11 U.S.C. § 727(a)(6)

Under Bankruptcy Code section 727(a)(6), the discharge may be denied if the debtor has refused to obey a lawful order of the court.  11 U.S.C. § 727(a)(6).  "Failure to obey an order of the court must be an intentional act of disobedience and not a mere accident, inadvertence, or inability."  *In re* Bressler, 601 B.R. 318, 332 (Bankr. S.D.N.Y. 2019).  The movant "must demonstrate a willfulness on the part of the debtor."  *Id.*  "In the absence of an explanation for the failure to comply, it can be inferred that the failure was a refusal to obey the court order."  *Id.* at 333 (citing *In re Lusane*, Case No. 11-00889, 2013 Bankr. LEXIS 1641, 2013 WL 1728990, at *6 (Bankr. D.D.C. Apr. 22, 2013)).

Paragraph J of the Confirmation Order states that "[t]he Debtor shall file monthly post-confirmation reports through the entry of a Final Decree."  Confirmation Order ¶ J.  On May 25, 2022 (the trial date), the Defendant filed eleven post-Confirmation Quarterly Operating Reports. Post-Confirmation Quarterly Operating Reps., ECF Nos. 465-475.  However, the reports for May through December of 2018, April through June of 2020, and January through March of 2021 still appear to be missing.

The Confirmation Order provides the Defendant's discharge may be denied for failure to file post-confirmation monthly operating reports "upon the filing of a certification by counsel for Plan Proponent confirming the same."  Confirmation Order ¶ L.  The Confirmation Order also provides the Defendant must file a motion to obtain entry of a discharge.  Confirmation Order ¶ K.  Although Plaintiff has not filed a certification, the Confirmation Order does not include a deadline for filing a certification.  More importantly, the Defendant has not yet filed a motion seeking a discharge.  Plaintiff would have no reason to file a certification until the Defendant requested a discharge.  Considering (a) the Court may take judicial notice that the Defendant failed

to file monthly operating reports, (b) under the Confirmation Order the Plaintiff could timely file certification, and (c) the amended complaint in Adv. Proc. No. 20-01032 alleges that the Defendant has failed to file monthly operating reports, the Court finds the failure to file a certification is not a bar to the Plaintiff's objection to discharge based on the Defendant's failure to file operating reports.

The Defendant claims he did not file the reports because he was preparing the reports himself instead of hiring an accountant.  The Defendant's statement does not explain the years' long lag in filing reports or why operating reports are still missing.  Therefore, the Court finds the Plaintiff has satisfied his burden of showing that the Defendant willfully violated the Confirmation Order.

## CONCLUSION

For the foregoing reasons, judgment is granted in favor of the Plaintiff on his fourth, fifth, and seventh Causes of Action in Adv. Proc. No. 20-01032 and his fifth and sixth Causes of Action in Adv. Proc. No. 21-01002. Judgment is denied on the Plaintiff's sixth Cause of Action in Adv. Proc. No. 20-01032.  The Plaintiff is directed to submit orders consistent with this memorandum.

**Dated: November 8, 2022**
**Brooklyn, New York**



_____
**Jil Mazer-Marino**
**United States Bankruptcy Judge**